1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CARLOS J. GARCIA,                          No.  2:15-cv-1888 MCE CKD P

12                    Plaintiff,

13            v.                                  FINDINGS AND RECOMMENDATIONS

14    BONNIE LEE, et al.,

15                    Defendants.

16

17

18    I.  Introduction

19            Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action pursuant to 42

20    U.S.C. § 1983.  This action proceeds against defendant Hogue on the amended complaint filed

21    November 2, 2015, alleging that Hogue was deliberately indifferent to plaintiff's serious medical

22    needs in violation of the Eighth Amendment.  (ECF No. 13 ("FAC").)  Before the court is

23    defendant's motion for summary judgment on the ground that plaintiff failed to exhaust

24    administrative remedies.  (ECF No. 32.)  Plaintiff has filed an opposition, and defendant has

25    replied.  (ECF Nos. 36 & 37.)

26            For the reasons set forth below, the undersigned will recommend that defendant's motion

27    be denied.

28    /////

1  II.  Legal Standards

2  A.  Summary Judgment

3        Summary judgment is appropriate when it is demonstrated that there "is no genuine

4  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

5  Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by

6  "citing to particular parts of materials in the record, including depositions, documents,

7  electronically stored information, affidavits or declarations, stipulations (including those made for

8  purposes of the motion only), admissions, interrogatory answers, or other materials. . ."  Fed. R.

9  Civ. P. 56(c)(1)(A).

10        In the endeavor to establish the existence of a factual dispute, the opposing party need not

11  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

12  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

13  trial."  T.W. Elec. Serv., 809 F.2d at 631.  All reasonable inferences that may be drawn from the

14  facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475

15  U.S. at 587.

16        In a summary judgment motion for failure to exhaust administrative remedies, the

17  defendants have the initial burden to prove "that there was an available administrative remedy,

18  and that the prisoner did not exhaust that available remedy."  Albino, 747 F.3d at 1172.  If the

19  defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence

20  showing that there is something in his particular case that made the existing and generally

21  available administrative remedies effectively unavailable to him."  Id.  The ultimate burden of

22  proof remains with defendants, however.  Id.  "If material facts are disputed, summary judgment

23  should be denied, and the district judge rather than a jury should determine the facts."  Id. at

24  1166.

25  B.  Exhaustion Requirement

26        Section 1997(e)(a) of Title 42 of the United States Code provides that "[n]o action shall be

27  brought with respect to prison conditions under section 1983 of this title, . . . until such

28  administrative remedies as are available are exhausted."  42 U.S.C. § 1997(e)(a) (also known as

1    the Prison Litigation Reform Act ("PLRA")).  A prisoner must exhaust his administrative

2    remedies before he commences suit.  McKinney v. Carey, 311 F.3d 1198, 1199–1201 (9th Cir.

3    2002).  Failure to comply with the PLRA's exhaustion requirement is an affirmative defense that

4    must be raised and proved by the defendant.  Jones v. Bock, 549 U.S. 199, 216 (2007).  In the

5    Ninth Circuit, a defendant may raise the issue of administrative exhaustion in either (1) a motion

6    to dismiss pursuant to Rule 12(b)(6), in the rare event the failure to exhaust is clear on the face of

7    the complaint, or (2) a motion for summary judgment.  Albino v. Baca, 747 F.3d 1162, 1169 (9th

8    Cir. 2014) (en banc).  An untimely or otherwise procedurally defective appeal will not satisfy the

9    exhaustion requirement.  Woodford v. Ngo, 548 U.S. 81, 84 (2006).

10   III.  Facts

11   A.  The FAC

12        In a verified complaint, plaintiff alleges that in January 2014, a physician at California

13   Correctional Institute issued him a medical chrono for Boost nutritional supplements.[1]  (FAC, ¶

14   12.)  At the time, plaintiff was 5'11" tall and weighed 124 pounds.  (Id., ¶ 14.)  Boost is a liquid

15   nutritional supplement containing 240 calories per carton.  (Id., ¶ 13.)  Plaintiff attaches the

16   chrono, which indicates that plaintiff was to receive "2 cans 2x/daily" through July 28, 2014.

17   (FAC, Ex. A.)  Over the next three months, plaintiff's weight increased to 132 pounds.  (Id., ¶

18   15.)

19        On June 4, 2014, plaintiff was transferred to High Desert State Prison.  (Id., ¶ 17.)  When

20   he arrived at HDSP, he was examined by defendant Hogue, a Registered Nurse.  (Id., ¶¶ 9, 18.)

21   Plaintiff told Hogue about his chrono for nutritional supplements.  (Id., ¶ 19.)

22        Hogue "failed to properly review plaintiff's . . . Health Care Transfer Information Form

23   … and medical records which stated plaintiff's chrono for liquid nutritional supplements[.]"  (Id.,

24   ¶ 22.)  Plaintiff attaches the transfer form, noting his medical chrono for "2 cans" and signed by

25   defendant Hogue on June 4, 2014.  (Id., Ex. B.)  Plaintiff attaches a second form, also dated June

26

27   [1] Because the court screened in plaintiff's Eighth Amendment claim concerning Hogue's failure
     to honor a medical chrono for Boost supplements, this summary omits allegations not relevant to
28   that claim.  (See ECF No. 15 at 2; ECF No. 19.)

1    4, 2014 and signed by Hogue, which notes that no medications were ordered or given to plaintiff.

2    (Id., Ex. C.)  Plaintiff alleges that Hogue "did not provide or place an order" for plaintiff to

3    receive Boost.  (Id., ¶ 22.)

4          "On June 8, 2014, plaintiff submitted a CDC Health Care Services Request Form

5    requesting liquid nutritional supplements . . . as prescribed, to no avail." (Id., ¶ 25.)  On June 15,

6    2014, plaintiff submitted a second Health Care Services Request Form requesting his Boost

7    supplements.  (Id., ¶ 26.)  On June 23, 2014, still not having received the supplement, plaintiff

8    filed a health care appeal at the first level.  (Id., ¶ 30.)  Three days later, an HDSP physician

9    interviewed plaintiff about the appeal and placed an order for him to receive four Boost

10   supplements per day.  (Id., ¶ 31.)  On July 24, 2014, plaintiff's appeal was granted in full at the

11   first level.  (Id., ¶ 32.)  Between April 28, 2014 and June 27, 2014, plaintiff lost four pounds as a

12   result of not receiving daily supplements.  (Id., ¶ 33.)

13         Plaintiff claims that defendant Hogue was deliberately indifferent to his serious medical

14   needs on June 4, 2014 "by not taking the necessary steps to ensure that plaintiff received

15   nutritional supplements . . . as prescribed." (Id., ¶¶ 93-95.)

16   B.  Undisputed Facts

17         The following facts are undisputed unless otherwise noted[2]:

18         During the relevant period, plaintiff was a prisoner within the custody of the California

19   Department of Corrections and Rehabilitation (CDCR) and was incarcerated at HDSP.  (DUF 1.)

20   An administrative inmate appeal process was available for plaintiff's use at HDSP.  (DUF 2.)

21   Between June 4, 2014 and September 8, 2015, plaintiff submitted five health care appeals that

22   were received by the HDSP Appeals Office.  (DUF 3.)

23         Appeal Number HDSP-HC-1402848 was received for first level review by the HDSP

24   Appeals Office on June 23, 2014.  (DUF 4.)  Defendant attaches a copy of the appeal, in which

25   plaintiff wrote: "I'm requesting the refill of my migraine medication (Sumatripton) and to receive

26   my Boost Drinks as prescribed to no avail." (Silkwood Decl., Ex. A, ECF No. 32-4 at 7.)

27

28   _____
     [2] See Def's Statement of Undisputed Facts (ECF No. 32-2); Plff's Response to Def's Statement of
     Undisputed Facts (ECF No. 36-2).

                                         4

1    Plaintiff attached his June 15, 2015 Health Care Services Request Form asking to "receive my

2    Boost drinks as prescribed." (Id. at 9.)  The appeal did not mention Hogue and was not

3    categorized or investigated as a staff complaint.  (DUF 7.)  Hogue was not interviewed regarding

4    the appeal.  (Id.)

5           On June 27, 2014, a Dr. Jeanne Windsor interviewed plaintiff about this appeal.

6    (Silkwood, Decl., Ex. A, ECF No. 32-4 at 5-6.)  Plaintiff told Windsor that, on June 4, 2014, "the

7    nurse later identified as defendant J. Hogue" asked plaintiff why he was receiving Boost drinks

8    and informed him that "We don't give Boost drinks to inmates just because they are

9    underweight." (Garcia Decl., ¶ 5, ECF No. 36-1 at 4.)  Windsor noted that plaintiff had an order

10   for nutritional supplements, the reviewer granted plaintiff's appeal at the first level.  (Silkwood,

11   Decl., Ex. A, ECF No. 32-4 at 5-6.)

12          Neither party contends that plaintiff's remaining four appeals at HDSP served to exhaust

13   his federal claim against defendant Hogue.  (See DUF 9-17.)

14   IV.  Analysis

15          Defendant argues that Appeal Number HDSP-HC-1402848 did not suffice to exhaust

16   plaintiff's Eighth Amendment claim against defendant Hogue.  Plaintiff disagrees.

17          The Prison Litigation Reform Act of 1995 (PLRA) "attempts to eliminate unwarranted

18   federal-court interference with the administration of prisons, and thus seeks to afford corrections

19   officials time and opportunity to address complaints internally before allowing the initiation of a

20   federal case." Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (internal citations omitted).

21   "Requiring exhaustion provides prison officials a fair opportunity to correct their own errors and

22   creates an administrative record for grievances that eventually become the subject of federal court

23   complaints." Id. (internal citations omitted).   Before bringing a federal claim under § 1983, a

24   prisoner must "properly" exhaust administrative remedies. Woodford, 548 U.S. at 93.  Proper

25   exhaustion under CDCR's administrative appeals process "demands compliance with [its]

26   deadlines and other procedural rules[.]" Id. at 91.  Proper exhaustion also requires a grievance to

27   be factually sufficient to "alert the prison as to the nature of the wrong for which redress is

28   sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  "The grievance process is only

1   required to 'alert prison officials to a problem, not to provide personal notice to a particular

2   official that he may be sued.'" Reyes, 810 F.3d at 659, quoting Jones, 549 U.S. at 219.

3        CDCR regulations governing the administrative appeal process require inmates to

4   describe the specific issue under appeal and the relief requested; identify all staff members

5   involved and describe their involvement; and include only one issue or related set of issues per

6   appeal. Cal. Code Regs. tit. 15, § 3084.2(a)(1)-(4). The California Code of Regulations states:

7   
8   
9   
10   
11   
12   
> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

13   Cal. Code Regs. tit. 15, § 3084.2(a)(3). Administrative remedies shall not be considered

14   exhausted relative to any new issue, information, or person later named by appellant that was not

15   included in the originally submitted appeal form, and addressed through all levels of

16   administrative review. Cal. Code Regs. tit., 15, § 3084.1(b).

17        To exhaust the administrative grievance process, prisoners must ordinarily proceed

18   through several levels of review: a first formal level; a second formal level; and a third formal

19   level, also known as the Director's Level. Cal. Code Regs. tit. 15, § 3084.5(a)-(d). Generally, a

20   prisoner must obtain a decision or final adjudication at the third formal level of review in order to

21   exhaust his administrative remedies for the claims underlying his complaint before he can submit

22   them to the district court. Rhodes v. Robinson, 621 F.3d 1002, 1005 (9th Cir. 2010). However,

23   in the Ninth Circuit, "a prisoner need not press on to exhaust further levels of review once he has

24   either received all 'available' remedies at an intermediate level of review or been reliably

25   informed by an administrator that no remedies are available." Brown v. Valoff, 422 F.3d 926,

26   940 (9th Cir. 2005).

27        Plaintiff declares that, though he did not identify Hogue in his written appeal, he informed

28   Dr. Windsor in the first-level interview that he requested his prescribed supplements from Hogue,

6

1    who told him: "We don't give Boost drinks to inmates just because they are underweight." (ECF

2    No. 36-1 at 4.)  Thus, plaintiff argues, the appeal process sufficiently put prison officials on

3    notice of his claim that Hogue was deliberately indifferent to his serious medical needs.  See

4    Wakefield v. Thompson, 177 F.3d 1160, 1165 (9th Cir. 1999) (deliberate indifference may be

5    shown when prison officials ignore express orders from a prisoner's treating physician).

6         The Ninth Circuit recently held that a prisoner exhausts available administrative remedies

7    "despite failing to comply with a procedural rule if prison officials ignore the procedural problem

8    and render a decision on the merits of the grievance at each available step of the administrative

9    process."  Reyes, 810 F.3d at 658.  However, "this does not mean that a claim decided on the

10   merits must be deemed exhausted as to all possible defendants."  Evans v. Muniz, 2016 WL

11   1559707, *3 (N.D. Cal. April 18, 2016).

12        In Reyes, the Ninth Circuit held that an inmate exhausted his federal claims, alleging that

13   defendant prison doctors denied him pain medication, when prison officials knew the doctors

14   were members of the committee that decided plaintiff should not receive the medication, and this

15   decision was cited by prison officials in denying Reyes' grievance.  On this record, the Ninth

16   Circuit held, "the state defendants cannot argue that prison officials were unaware of the

17   involvement of" the doctors in the events alleged.  Id. at 659.  Thus, even though Reyes did not

18   name the physicians in his grievance in violation of Cal. Code Regs. tit. 15 § 3084.2, the Ninth

19   Circuit concluded that the grievance sufficiently put prison officials on notice of the wrongs

20   alleged so as to exhaust his federal claims.  Id.

21        Defendants argue that the instant case is distinguishable from Reyes, as "plaintiff did not

22   raise the issue of deliberate indifference in his appeal so prison officials were unaware of his

23   claim" that Hogue had been deliberately indifferent to his serious medical needs.  (ECF No. 37 at

24   4-5.)  This argument has some merit, as plaintiff could have simply explained in his written

25   grievance, per prison regulations, that on June 4, 2014, Hogue knew of and ignored his medical

26   chrono for Boost supplements," thus putting officials on notice of the gravamen of his federal

27   complaint.

28   ////

1    Instead, plaintiff requested to "receive my Boost Drinks as prescribed to no avail": a

2    written grievance that did not alert officials to Hogue's involvement.  However, given plaintiff's

3    declaration that he verbally informed Dr. Windsor of Hogue's involvement in the first-level

4    interview, and in light of the Ninth Circuit's holding in Reyes, the undersigned concludes that

5    defendant is not entitled to summary judgment on the basis of plaintiff's failure to exhaust

6    administrative remedies.  Rather, drawing all inferences in plaintiff's favor, a finder of fact could

7    determine that prison officials were made aware of Hogue's disregard of plaintiff's medical

8    chrono in the course of the inmate grievance process.  Moreover, as plaintiff's grievance was

9    granted at the first level, he was not required to pursue further administrative remedies.

10    Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion for summary

11    judgment (ECF No. 32) be denied.

12    These findings and recommendations are submitted to the United States District Judge

13    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

14    after being served with these findings and recommendations, any party may file written

15    objections with the court and serve a copy on all parties.  Such a document should be captioned

16    "Objections to Magistrate Judge's Findings and Recommendations."  The parties are

17    advised that failure to file objections within the specified time may waive the right to appeal the

18    District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19    Dated:  January 5, 2017

20    _____
     CAROLYN K. DELANEY
21    UNITED STATES MAGISTRATE JUDGE

22

23

24    2 /dani2176.sj

25

26

27

28

8